UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Petitioner, | |
| v. | CIV. ACTION NO.: 4:23-CV-91 |
| HOUSE OF PRAYER BIBLE SEMINARY, | |
| Respondent. | |

## MARCUS LABAT'S RESPONSE TO THIS COURT'S ORDER TO SHOW CAUSE (DOCKET ENTRY 26)

COMES NOW, Brian T. Rafferty, on behalf of non-party, Marcus Labat ("Labat"), in the above-styled matter, and files this Response to this Court's Order to Show Cause (Docket Entry 26) and states as follows:

## PROCEDURAL BACKGROUND

1. On September 26, 2023, the government filed its Motion for an Order to Show Cause Why House of Prayer Bible Seminary ("HOPBS"), non-party Labat and others, should not be held in civil contempt for failing to provide sworn certificates of HOPBS's compliance with Civil Investigative Demands ("CID") No. 2019-041 and CID No. 2023-001. Doc. 21.

2. On February 7, 2024, the Court granted the government's Motion, and directed Labat to show cause why he should not be held in contempt of court within twenty-one (21) days of the date of the Order for failing to respond to certain Civil Investigative Demands. Doc. 26.

3. Labat files the instant response to the Court's Order. Well before the

government filed its Motion, Labat was specifically advised that he was a target of a criminal investigation by the Department of Justice for his alleged role in producing documents in response to CID No. 2019-041.  Because both CID No. 2019-041 and CID No. 2023-001 seek to compel Labat to provide certifications relating to the production of documents about which Labat has been advised he is a target of a criminal investigation, Labat, upon advice of counsel, invokes his Fifth Amendment right against self-incrimination to avoid potential criminal liability.  Labat respectfully submits he should not be held in contempt for invoking his rights guaranteed under the Constitution and refusing to provide written certifications as demanded by the government.

## FACTUAL BACKGROUND

4.  The government is not only conducting a civil investigation under the FCA to determine whether HOPBS and individuals acting on its behalf submitted or caused the submission of false claims for veterans' education and housing benefits, including those under the Post-9/11 GI Bill, 38 U.S.C. § 3001, et esq.  The government is also conducting a parallel criminal investigation of the same conduct and identified Labat a criminal target of that investigation.  That criminal investigation extends to allegations that Labat and others provided false and fraudulent documents in response to CID No. 2019-041.

5.  According to the government, it effectuated service of CID No. 2019-041 upon HOPBS on February 7, 2020. Doc. 3-3.  The CID called for the production of interrogatories and assorted documents from HOPBS, and identified Special Agent Katie O'Neil of the United States Department of Veterans Affairs, Office of Inspector General, and Special Agent Randy Dye of the Federal Bureau of Investigations, as False Claims Act

Investigators and Custodians to whom documents from HOPBS should be made available. Doc. 3-1 at 3. Counsel for HOPBS produced documents in response to CID No. 2019-041 on March 12, 2020, and March 27, 2020. Doc. 3-4, Doc. 3-6.

6. The government apparently did not follow up on the two productions from HOPBS in response to CID No. 2019-041 for more than one year, when it emailed counsel for HOPBS on October 14, 2021, to check on the status of the matter. Doc. 3-7.

7. On June 16, 2022, the government sought and obtained search warrants at various HOPBS and House of Prayer Christian Churches ("HOPCC") locations in Fayetteville, North Carolina; Hinesville, Georgia; Augusta, Georgia; Killeen, Texas, and Tacoma, Washington. A copy of the search warrant for the Hinesville location is attached hereto as Exhibit A.

8. On June 23, 2022, the government executed the search warrants at various HOPBS and HOPCC locations, including the locations in Fayetteville, North Carolina; Hinesville, Georgia; Augusta, Georgia; Killeen, Texas, and Tacoma, Washington.

9. The same day that the government executed search warrants at various HOPBS locations, the government delivered by hand a target letter to Labat, specifically identifying Labat as a target of a criminal investigation for the very conduct at issue in CID No. 2019-041. A copy of the target letter is attached here as Exhibit B.

10. Of note, before execution of the search warrants and delivery of the target letter to Labat, the government apparently had not sought the aforementioned certification in response to CID No. 2019-041, and had not contacted counsel for HOPBS about the CID since October 2021.

11. The undersigned contacted the government shortly after the delivery of the target letter to Labat, and communicated telephonically and electronically with the government to schedule a "reverse proffer" with prosecutors. That "reverse proffer" meeting was ultimately scheduled for September 20, 2022. At this point, the government had not requested production of the certificate of compliance for CID No. 2019-041, and had not raised allegations of obstruction of justice and production of false documents in response to CID No. 2019-041 with counsel for HOPBS or counsel for Labat.

12. Perhaps coincidentally, on September 19, 2022, the day before the "reverse proffer" with Labat was scheduled, the government contacted counsel for HOPBS and for the first time, specifically requested production of the certificate of compliance for CID No. 2019-041. Doc. 3-9. Notably, in making this request, the government specifically referenced Labat as the individual that it understood would be executing the certificate of compliance on behalf of HOPBS. Id. In requesting the certificate of compliance, the government made no reference to allegations of obstruction of justice, or of allegations that false documents were produced in response to CID No. 2019-041.

13. On September 20, 2022, the undersigned attended a reverse proffer at the United States Attorney's Office for the Southern District of Georgia. The reverse proffer was attended by a number of federal prosecutors, along with Special Agent Katie O'Neill and Special Agent Douglas Dye, the same Special Agents identified by the government as False Claims Investigators and Custodians in connection with CID No. 2019-041. Doc. 3-1 at 3.

14. During the reverse proffer on September 20, 2022, the government

specifically described its investigation and Labat's status as a target of the investigation. Important for the purposes of the instant response, the government for the first time alleged that Labat and others had obstructed justice and provided false documents in response to CID No. 2019-041. Among other things, the government specifically identified documents submitted in response to CID No. 2019-041 that it claimed were false, and its belief that Labat was responsible for producing those false documents in response to CID No. 2019-041. The government concluded its presentation by indicating that charges related to obstruction of justice and false documents relating to HOPBS's response to CID No. 2019-041 would likely be included in the Indictment against Labat, and requested that Labat plead guilty and cooperate against others in the government's investigation.

15. Shortly after the "reverse proffer," the undersigned advised the government that Labat was unwilling to accept the government's offer.

16. On February 1, 2023, after the undersigned informed the government that Labat would not accept the government's offer, the government issued CID No. 2023-001, seeking information about the identities of the individual who provided responsive documents to CID No. 2019-041.

## ARGUMENT

17. The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against [herself]." U.S. Const., amend. V. Because "the privilege protects the innocent as well as the guilty," *Ohio v. Reiner*, 532 U.S. 17, 18 (2001), an assertion of innocence is not inconsistent with invoking the Fifth Amendment privilege. The Supreme Court has never held that Fifth

Amendment protections are only available to the guilty. *See id*. at 21 ("[O]ne of the Fifth Amendment's basic functions ... is to protect *innocent* men [and women]...who otherwise might be ensnared by ambiguous circumstances." (internal quotations omitted) (quoting *Grunewald v. United States*, 353 U.S. 391, 421 (1957) (quoting *Slochower v. Board of Higher Ed. of New York City*, 350 U.S. 551, 557-58 (1956)) (emphasis in *Grunewald*))). A conflict between a party's right to present evidence and a witness's Fifth Amendment self-incrimination privilege should be resolved in favor of the witness's right to remain silent. *See United States v. Cuthel*, 903 F.2d 1381, 1384 (11th Cir. 1990).

18. In the Eleventh Circuit, a witness may properly invoke his or her Fifth Amendment privilege even when there are no criminal charges pending against the witness and the risk of prosecution is remote. *See id*. Moreover, "the Fifth Amendment privilege against compulsory self-incrimination…protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). "'The privilege afforded not only extends to answers that would in themselves support a conviction under a…criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a…crime.'" *United States v. Stewart*, 907 F.3d 677, 684 (2d Cir. 2018) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). "To summarize the relevant precedent, a witness is entitled to invoke his right to silence under the Fifth Amendment even if he merely suspects that his testimony could later incriminate him, which would then preclude that witness from being called at

trial." *Perpall v. United States*, No. 22-CV-22770, 2022 U.S. Dist. LEXIS 222467, *9 (S.D. Fla. Dec. 9, 2022).

19. An individual must show three things to fall within the ambit of the Fifth Amendment: (1) compulsion; (2) a testimonial communication or act, and (3) incrimination. *See United States v. John Doe*, 670 F.3d 1335, 1341 (11th Cir. 2012) (citing *United States v. Ghidoni*, 732 F. 2d 814, 816 (11th Cir. 1984)(citing *United States v. Authement*, 607 F. 2d 1129, 1131 (5th Cir. 1979) (per curiam).[1] The act of production in response to a subpoena can be testimonial when that act conveys some explicit or implicit statement of fact that certain materials exist, are in the subpoenaed individual's possession or control, or are authentic. *See United States v. Hubbell*, 530 U.S. 27, 36 & n. 19 (2000).

20. Here, the government is seeking to compel Labat to provide a certification for the two CIDs, either by executing the certification himself, or by having another individual execute the certification on behalf of the HOPBS. It is beyond dispute that the government is compelling compliance, as the government moved to compel compliance in the government's Motion that led to the instant order. Similarly, in light of the government's identification of Labat as a target of a criminal investigation based on allegations that he produced false documents and otherwise obstructed justice in connection with CID No. 2019-041, it is also beyond dispute that compliance with the CIDs would clearly be incriminatory as to Labat. Thus, the only question is whether requiring Labat to execute

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the 11th Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the certifications for the two CIDs himself, or identifying another individual to execute the certifications on behalf of HOPBS, would be "testimonial" within the meaning of the Fifth Amendment.

21. Labat respectfully submits that whether he is compelled to complete the certifications to the CIDs himself, or is compelled to arrange another to execute the certifications to the CIDs on behalf of HOPBS, his actions would be testimonial within the meaning of the Fifth Amendment. By executing the certification to CID No. 2019-041 himself, Labat would essentially be compelled to admit the government's allegation that he collected the various documents in response to CID No. 2019-041, including those documents the government now claims are false, and the government could use that certification against Labat in a subsequent criminal prosecution of him. Similarly, as to the certification to CID No. 2023-001, by executing that certification himself, Labat would again be certifying to information that the government would use against Labat in a subsequent criminal prosecution of him.

22. The same conclusion is reached if the government attempts to compel Labat to arrange another to execute the certifications to the CIDs on behalf of HOPBS. Even forcing Labat to arrange for another to execute the certifications would be testimonial, as that act would "furnish a link in the chain of evidence needed to prosecute" Labat for a federal crime. *See Hoffman v. United States*, 341 U.S. at 486.

## **CONCLUSION**

23. Based on the foregoing, Labat asks this Court to find that he has a

legitimate and proper Fifth Amendment right to refuse to provide certifications in response to the CIDs. Further, Labat respectfully submits he should not be held in contempt for invoking his rights guaranteed under the Constitution and refusing to provide written certifications as demanded by the government.

Respectfully submitted, this the 11th day of March 2024.

/s/ Brian T. Rafferty
Brian T. Rafferty
Georgia Bar No. 311903
Counsel for Defendant

RAFFERTY LAW, LLC
1575 Johnson Road
Atlanta, Georgia 30338
(912)658-0912
brian@raffertylawfirm.com

## CERTIFICATE OF SERVICE

 I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court for the Southern District of Georgia by way the CM/ECF system, which automatically will serve this document on the attorneys of record for the parties in this case by electronic mail.

This 11th day of March, 2024.

*/s/ Brian T. Rafferty*
Brian T. Rafferty
Georgia Bar No. 311903
Counsel for Defendant