## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 4:23-cv-00091-RSB-CLR |
| v. | ) | |
| | ) | |
| HOUSE OF PRAYER BIBLE | ) | |
| SEMINARY | ) | |

### HOUSE OF PRAYER BIBLE SEMINARY'S RESPONSE TO
### SHOW CAUSE ORDER

NOW COMES House of Prayer Bible Seminary ("HOPBS") and responds to this Court's February 7, 2024 Show Cause Order, showing this Court as follows:

### FACTUAL AND PROCEDURAL BACKGROUND[1]

The Government issued Civil Investigative Demand ("CID No. 2019-041" or the "first CID") to HOPBS *more than four years ago* on *December 9, 2019*. Through prior counsel, HOPBS responded to this first CID by producing responsive documents to the Government in March 2020. For a year and a half after those productions, HOPBS heard nothing else from the Government about this first CID.

Nineteen months later (and almost 2 years after the initial issuance of the first

---

[1] This recitation of facts is necessarily based in part on representations made to HOPBS' current counsel by its prior counsel and by counsel for some of the individuals associated with HOPBS. To the extent that any material fact is disputed by the Government, HOPBS will present testimony or affidavits to further support those facts as the Court deems necessary.

CID), on October 14, 2021, AUSA Swedler reached out to then-counsel for HOPBS, Steve Sadow, to confirm that the production had been made in response to the first CID, which Mr. Sadow confirmed. The Government did not request or mention any certification for the production from the first CID at that time.

HOPBS heard nothing further from the Government regarding the first CID for *another eleven (11) months*, until September 19, 2022 (or almost three years after the issuance of the first CID), at which time the Government began seeking a certification of those responses. Between the October 14, 2021 and September 19, 2022 contacts from the Government, no communications occurred regarding the first CID, but there were significant developments in the Government's *criminal* investigation of HOPBS and other individuals and entities associated with HOPBS.

Specifically, in June 2022, the Government sent criminal target letters to Marcus Labat, Omar Garcia, and perhaps other individuals associated with HOPBS or HOPCC. In July 2022, the Government executed criminal search warrants at HOPBS and HOPCC offices located in Fayetteville, North Carolina; Hinesville, Georgia; Augusta, Georgia; Killeen, Texas; and Tacoma, Washington. On information and belief, Special Agent Doug "Randy" Dye of the FBI and Special Agent Katie O'Neill of the Veterans Administration, the same two agents who were listed on HOPBS' first civil CID, participated in preparing and/or executing of the criminal search warrants.

On September 19, 2022, almost three years after the issuance of the first CID, AUSA Brad Patrick contacted Mr. Sadow, informing him that he had taken over the civil part of the case and that the Government now wanted a certification from HOPBS of its responses to the first CID.  Mr. Sadow explained to AUSA Patrick that a certification at this juncture was not possible because of the intervening developments in the criminal part of the case, which included the issuance and execution of search warrants, the labeling of key individuals of the organization as targets in the criminal investigation, and the specific allegations by the Government in the reverse proffers in the criminal investigation that the documents produced in response to this first CID were false or fraudulent.  The Government seemingly accepted this reasonable explanation based on the passage of years and these materially changed circumstances, and HOPBS heard nothing more from the Government about the first CID for four *more* months.

On September 20, 2022, the day after AUSA Patrick first began to inquire about a certification for the first civil CID,  the criminal AUSAs assigned to this case at that time (AUSA Howard, AUSA Kirkland, and DOJ Prosecutor Lauren Archer)[2] conducted a reverse proffer with Brian Rafferty, counsel for Marcus Labat.  According to Mr. Labat's counsel, Special Agent Dye and Special Agent O'Neill

---

[2] The criminal AUSA currently assigned to this matter is Patricia Rhodes.  On information and belief, DOJ Prosecutor Archer also remains involved.

also attended the reverse proffer in the criminal case.  In that meeting, the AUSA informed Mr. Rafferty that the Government believed that Mr. Labat had submitted false documents in response to the first CID and encouraged Mr. Rafferty to recommend a plea deal to his client.  Shortly after that meeting, Mr. Rafferty informed the Government that his client was not interested in a plea deal.  On information and belief, other directors/executives of HOPBS also participated in such reverse proffers and similarly declined to accept any plea offers.

On January 13, 2023, however, AUSA Patrick notified Mr. Sadow that the Government would be issuing a second CID to HOPBS.  That CID ("CID No. 2023-001" or the "second CID") was issued on January 27, 2023.  On February 1, 2023, AUSA Patrick emailed Mr. Sadow to inform him that the second CID was being served that day.  *See* Govt. Motion for Order to Show Cause, Ex. J (ECF No. 3-10).  At that time, and given the developments in the case, Mr. Sadow informed AUSA Patrick that he only represented Reverend Denis individually and that he did not represent HOPBS.  *Id.*

The second CID issued by the Government to HOPBS was purportedly served under 31 U.S.C. § 3733(d)(1)(c) by certified mail to 2540 Airport Road, Hinesville, GA 31313.[3]  *See* Government Petition for Summary Enforcement at Ex. 3 (ECF No.

---

[3] This address is the registered address for House of Prayer Christian Churches ("HOPCC"), which is a separate non-profit corporation that is not a parent, owner,

1-3).  The Hinesville, Georgia location is the registered address for HOPCC, *not* HOPBS.  In fact, as the Government was aware, HOPBS is a North Carolina entity with its registered address and principal office located at 5204 Hodge Street, Fayetteville, North Carolina.  *See* Government Motion for Default Judgment at Ex. 1 (ECF No. 14-1) (HOPBS Articles of Incorporation noting that the "principal office" and "registered office" of HOPBS is located in Fayetteville, North Carolina). Additionally, the second CID did not seek additional information relevant to the Government's civil False Claims Act investigation.  Instead, it sought information regarding the manner and method of the production of documents and information for the first CID – the very documents and information that the criminal AUSA and the same federal agents had just informed Mr. Rafferty and others in their reverse proffers that they believed were criminally false and/or fraudulent.

On April 7, 2023, the Government filed a Petition for Summary Enforcement (ECF No. 1) and a Motion for an Order to Show Cause (ECF No. 3).  In those filings, the Government demanded – more than three years after the service of that first CID (and after the criminal side of the Government's investigation had executed search warrants, issued target letters, and requested plea deals which were rejected regarding the same conduct) -- that the Court order HOPBS to provide a certification

---

or subsidiary of HOPBS and that is not a named party in the Government's Petition for Summary Enforcement or any of its motions.

for the first CID and that it respond to the second CID (which sought only potentially incriminating information regarding how HOPBS responded to the first CID, as explained in more detail herein). As with the second CID, the Government's Petition was served by certified mail only to HOPCC's address in Hinesville, Georgia; it was not sent to HOPBS' registered office and principal place of business in Fayetteville, North Carolina. *See* Summons to HOPBS (ECF No. 11).[4] On May 31, 2023, the Government filed a Motion for Entry of Default (ECF No. 12), which it also served only on the Hinesville, Georgia address for HOPCC. *Id.* The Clerk of Court entered Default that same day (ECF No. 13).

On June 2, 2023, the Government filed a Motion for Entry of Default Judgment, which motion was also served only to the HOPCC Hinesville, Georgia

---

[4] The Court's docket reflects that the Government initially attempted to serve the Petition for Summary Enforcement and Motion on HOPBS by serving its supposed registered agent personally, presumably under Section 3733(d)(1)(a). *See* ECF No. 6-1 (Affidavit of Service). That Affidavit of Service, however, was served on the registered agent for HOPCC, *not* the registered agent for HOBPS. *Id.*; *see also* ECF No. 14-1 (HOPBS Articles of Incorporation). Apparently recognizing this service as erroneous and insufficient, the Government on its own initiative attempted to re-serve the Petition and Motion for Summary Enforcement on HOBPS by certified mail pursuant to Section 3733(d)(1)(c). *See* ECF No. 11 (Executed Summons). However, despite recognizing its error in serving HOPCC's registered agent instead of HOPBS's registered agent in its first attempt at service, the Government nonetheless effectuated its second attempted service only at HOPCC's Hinesville, GA address instead of sending it to HOPBS' primary place of business in Fayetteville, NC, which is plainly reflected in the HOBPS Articles of Incorporation (ECF No. 14-1) and on the North Carolina Secretary of State's Website. *See* NC Corporate Registration of HOPBS, *available at* https://www.sosnc.gov/online_services/search/Business_Registration_Results.

address (ECF No. 14). This Court granted that motion on September 5, 2023 and ordered HOPBS to provide a certification for the first CID and to respond to the second CID within 10 days (ECF No. 18). The Court's Order was not served on HOPBS. *Id.*

Undersigned counsel for HOPBS was hired on or around September 15, 2023, and immediately reached out to the Government the same day to try to understand the legal posture and attempt to find a collaborative solution.[5] HOPBS' counsel was and remains in regular contact with AUSA Patrick regarding these matters. Despite these facts and counsel's newness to this long-pending investigation, the Government nonetheless filed yet another motion in this matter – a Motion to Show Cause (ECF No. 21) – on September 26, 2023, asking this Court to hold HOPBS, non-party HOPCC, and several non-party individuals in contempt with regard to HOPBS's first and second CIDs. On October 2, 2023, this case was reassigned to Judge Baker (ECF No. 24). On February 7, 2024, this Court issued an Order for HOPBS, HOPCC,[6] and several individuals to Show Cause as to why they should not be held in contempt.

Because the Government never properly served HOPBS, HOPBS was under no obligation to respond to the Government's second CID, to its Petition for

---

[5] In fact, HOPBS' counsel communicated with AUSA Patrick in just the month of September on 09/15, 9/18, 9/19, 9/20, 9/21, 9/22, 9/25, and 9/26.

[6] HOPCC has separately filed its response to this Court's order.

Summary Enforcement, or any of its subsequent motions. As such, Default and Default Judgment were improperly entered in this case and are void and due to be vacated, leaving no grounds for any finding of contempt. And because the Government's pursuit of civil discovery in this case at this point and in these ways is improper and an abuse of this Court's process, its request for contempt should be denied in any event.

## ARGUMENT AND CITATION OF AUTHORITY

**I.   Because the Government Never Served HOPBS With the Second CID, the Petition for Summary Enforcement, the Initial Motion for Order to Show Cause, the Motion for Default, or the Motion for Entry of Default Judgment, HOPBS Had No Obligation to Respond.**

A defendant's obligation to respond to a complaint or petition does not arise until it has been served with the summons and complaint/petition or has waived service. *See, e.g., Carswell v. Whittle*, No. CV 112-066, 2012 WL 6084649, at *1 (S.D. Ga. Oct. 24, 2012) (citing Fed. R. Civ. P. 12(a)), *report and recommendation adopted,* No. CV 112-066, 2012 WL 6084647 (S.D. Ga. Dec. 6, 2012); *see also McElroy v. Baker*, No. CV423-038, 2023 WL 3294583, at *4 (S.D. Ga. May 5, 2023) ("A defendant's obligation to respond does not arise ... until he has been served with the summons and complaint or has waived service."), *report and recommendation adopted,* No. CV423-038, 2023 WL 3656942 (S.D. Ga. May 25, 2023).

Additionally, Rule 55 authorizes the entry of default only against *a properly served defendant* who fails to "plead or otherwise defend." *Cannalte v. HBC Servs. Inc.*, No. 1:19-CV-4955-JPB-JKL, 2020 WL 9936711, at *2 (N.D. Ga. Oct. 19, 2020) (quoting Fed. R. Civ. P. 55(a)), *report and recommendation adopted*, No. 1:19-CV-04955-JPB, 2020 WL 9936706 (N.D. Ga. Nov. 9, 2020). "If ... the plaintiff has failed to properly serve the defendant with process, the plaintiff is *not entitled to the entry of a default* despite the defendant's failure to timely respond[.]" *Griffin v. Philips*, No. 4:22-CV-268, 2023 WL 129416, at *3 (S.D. Ga. Jan. 9, 2023) (citing *Asskia v. Nelson*, 2021 WL 6063960, at *1 (N.D. Ga. Dec. 22, 2021) (emphasis added)); *see also id.* ("A defendant's obligation to respond does not arise until he has been served with the summons and complaint or has waived service. [Cit.] Therefore, *default is not available against a party who has not been properly served with process*." (citing *Sholes v. Anesthesia Dept.*, 2020 WL 1492175, at *2 (S.D. Ga. Mar. 23, 2020) (internal quotation marks, alterations, and citation omitted) (emphasis added)); *see also In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where *service of process is insufficient*, the court has no power to render judgment and the *judgment is void*." (citing *Varnes v. Local 91, Glass Bottle Blowers Ass'n,* 674 F.2d 1365, 1368 (11th Cir.1982) (finding a judgment void under Rule 60(b)(4) where the defendant was not properly served) and *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) ("An

elementary and fundamental requirement of due process in any proceeding ... accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the ... action and [to] afford them an opportunity to present their objections." (citations omitted) (emphasis added)).

Based on these plain authorities, HOPBS was not required to respond to the Government's second CID, its Petition for Summary Enforcement, or any of its subsequent motions. Additionally, the entry of default and default judgment is void and should be set aside. No ground for contempt, therefore, exists.

### A. The Government Did Not Properly Effectuate Service of Its Second CID, its Petition for Summary Enforcement, or Its Other Motions Under 31 U.S.C. § 3733(d)(1)(c).

The Government claims to have served HOPBS with its second CID and its Petition for Summary Enforcement (ECF No. 1) pursuant to 31 U.S.C. § 3733(d)(1)(c). That portion of the statute provides that service of such a CID or petition can be made upon a partnership, corporation, association, or other legal entity by "depositing an executed copy of such demand or petition in the United States mails by registered or certified mail, with a return receipt requested, addressed to such partnership, corporation, association, or entity *at its principal office or place of business.*" (Emphasis added).[7]    *See* Summons to HOPBS (ECF No. 11).  The

---

[7] Service may also be effectuated by "delivering an executed copy of such demand or petition to any partner, executive officer, managing agent, or general agent of the

Government's second CID and its Summons for the Petition for Summary Enforcement, however, were sent by certified mail only to 2540 Airport Road, Hinesville, GA 31313, which is the address for HOPCC, not HOPBS. *Id.* The Government also purported to serve its subsequent Motion for Entry of Default (ECF No. 12) and Motion for Default Judgment (ECF No. 14) on HOPBS at this same incorrect Hinesville, GA address.

As the Articles of Incorporation for HOPBS that the Government itself attached to its Motion for Entry of Default Judgment (ECF No. 14-1) establish, however, HOPBS is a domestic North Carolina nonprofit corporation with its registered office and principal address at 5204 Hodge Street, Fayetteville, NC 283030. As such, HOPBS was never properly served with the second CID, the Government's Petition for Summary Enforcement, or any of the subsequent motions in this action. As a result, it had no legal obligation to respond to either the second CID or any of the filings in this case.

The Government *concedes* that HOPBS is a North Carolina corporation with its principal and registered place of business at the Hodge Street address in Fayetteville, NC. *See* Motion for Default Judgment (ECF No. 14) at 2-3 and Exhibit 1 (ECF No. 14-1) (Articles of Incorporation of HOPBS). It also concedes that it did

---

partnership, corporation, association, or entity, or to any agent authorized by appointment or by law to receive service of process on behalf of such partnership, corporation, association, or entity." 31 U.S.C. § 3733(d)(1)(a).

not serve HOPBS with its second CID, its Petition for Summary Enforcement, or its Motions for Default and for Entry of Default Judgment at the North Carolina address or with the registered agent as required by 31 U.S.C. § 3733(d)(1). *See id.*; *see also* ECF Nos. 1, 11, and 12.

Despite these undisputed facts, however, the Government claims that it properly served HOPBS at the Hinesville, Georgia address, which is the address of HOPCC. *Id.*  The Government asks this Court to ignore the plain language of 31 U.S.C. § 3733(d)(1) and the undisputed fact that HOPBS is a North Carolina nonprofit corporation with a principal place of business in North Carolina and instead determine that the Georgia address used by the Government is *actually* HOPBS' primary place of business within the meaning of Section 3733(d)(1)(c). According to the Government, this is because "HOPBS is wholly owned by its parent company, House of Prayer Christian Churches of America, Inc., which in turn maintains its principal office at 2540 Airport Road, Hinesville, Georgia 31313" and because the Supreme Court has stated, in the entirely separate and distinguishable context of diversity jurisdiction, that "the phrase 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)). Respectfully, these arguments simply do withstand scrutiny.

First, HOPBS and HOPCC are separate, nonprofit corporations, and as such

they have no "owner."[8] HOPCC, therefore, is not a parent company to or an owner of HOPBS, and the Government has not provided this Court with any evidence to support its bald assertions to the contrary upon which its entire service theory relies.

Second, the sole case upon which the Government relies to support its untenable proposition, *Hertz*, addresses "principal place of business" in a completely different and distinguishable context: *i.e.,* a corporation's principal place of business for determining the state in which it is considered a citizen for diversity jurisdiction under 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State *by which it has been incorporated* and of *the State where it has its principal place of business.*") (emphasis added). In *Hertz*, the Supreme Court addressed diversity jurisdiction and the diversity jurisdiction statute:[9] it has *nothing* to do with

---

[8] *See, e.g.,* Greg McGray, *Who Really Owns a Nonprofit?,* Foundation Group (Aug. 22, 2022), *available at https://www.501c3.org/who-really-owns-a-nonprofit/* ("A nonprofit corporation has no owners (shareholders) whatsoever. Nonprofit corporations do not declare shares of stock when established. In fact, some states refer to nonprofit corporations as *non-stock* corporations. A nonprofit corporation is formed to carry out a non-commercial purpose, whether that be religious, educational, charitable, scientific or other qualifying purpose. It is prohibited from acting in a manner that results in private inurement (profit) to individuals.")

[9] In *Hertz,* the Supreme Court made plain that its interpretation of the phrase "principal place of business" in the diversity statute was completely dependent upon that jurisdictional context and the need for federal courts to interpret that statute narrowly to limit the exploding diversity jurisdiction of the federal courts and effectuate the core purpose of diversity jurisdiction – "to find the State where a corporation is least likely to suffer out-of-state prejudice when it is sued in a local court." *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010). None of those policy considerations that were critical to the Court's decision in *Hertz* are present here,

proper *service* of a corporate entity at all, much less with the specific service provisions of 31 U.S.C. § 3733(d)(1)(c).  The Government has cited *no case* or other authority in which any court has grafted this inapposite definition of "principal place of business" from the diversity jurisdiction statute onto the plain statutory language of  31 U.S.C. § 3733(d)(1)(c), and undersigned counsel cannot, after a diligent search, find any such authority.

Indeed, to do so would fly in the face of the actual language of the CID statute itself.  Specifically, Section 3733(d)(1)(a) of that statute permitted the Government to serve its second CID, Petition for Summary Enforcement, and subsequent Motions on one of the *officers or agents* of HOPBS by *personal service* had it so chosen.  But the Government chose instead to travel under Subsection (d)(1)(c) permitting service on a corporation's *principal place of business* (not its officers or directors) by *certified mail*, which the Government did not do (despite the ease with which it could have done so).  The statutory language of Section 3733(d) is clear, and the Government cannot and has not satisfied its service requirements.[10]  Service

---

where the issue is how the Government must effectuate service in a federal investigation as set forth specifically by Congress in the CID statute.  In this context, the Government must be held to the strictest standards of compliance given the language of the statute and the potential due process considerations at stake.

[10] Adopting the interpretation of Section 3733(d)(1)(c) requested by the Government here is not only contrary to the statute's plain language and unsupported by any authority, but also decidedly ill-advised.  It would improperly and unnecessarily inject ambiguity, uncertainty, and unfairness into the otherwise straightforward

on HOPBS, therefore, was never properly effectuated.

**B.** **Because HOPBS Was Not Properly Served With The Second CID, The Government's Petition, or The Motions for Default And Entry of Default Judgment, It Had No Obligation to Respond, Default Was Improperly Entered, And Contempt Will Not Lie.**

,

The Government failed to serve HOPBS with the second CID, the Petition for Summary Enforcement, or the motions regarding default, and HOPBS was not required, therefore, to respond to or defend against them. *See, e.g., Carswell,* 2012 WL 6084649, at *1. As such, the entry of default and default judgment in this case was improper and void, *Cannalte,* 2020 WL 9936711, at *2 and *In re Worldwide Web Sys., Inc.,* 328 F.3d at 1299, and there is no basis for any finding of contempt.

language of Section 3733(d)(1)(c). Specifically, under the Government's theory, it could simply decide, based upon its own subjective view of the known evidence and without notification to the affected corporation, that a certain location was the "nerve center" of a corporation or enterprise, regardless of (indeed, in contravention of) the official, publicly filed documents establishing the State and location where that corporation is incorporated and operates. Under the Government's theory, it could then serve the corporation at that subjectively determined "nerve center" address, and then seek summary enforcement when that entity does not respond without regard to whether the Government's assessment of the evidence regarding the supposed "nerve center" of the organization was accurate or whether the affected corporation or enterprise ever actually received the process or motion that the Government had supposedly served upon it. Especially because the CID statute makes service on the principal place of business of a corporation so easy to accomplish (simply by certified mail), where the publicly filed business records of the corporation establish the corporation's registration and principal place of business, the Government at a minimum is required under Section 3733(d)(1)(c) to serve that entity at that address. Nothing in the statute allows the Government to evade that plain language, disregard public records, and make its own subjective determination of where the corporation's principal place of business "actually" is.

Specifically, a party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order. *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992) (per curiam). Clear and convincing evidence must demonstrate that: "1) the allegedly violated order was valid and lawful; 2) the order was *clear and unambiguous*; and 3) the alleged violator had the ability to comply with the order." *Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007) (emphasis in original)). "Ambiguities should be resolved in favor of the party charged with contempt." *Id.* (citations omitted). Once a prima facie showing of a violation is made, the burden shifts to the alleged contemnor "to produce evidence explaining his noncompliance" at a show-cause hearing. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991).

As explained in greater detail herein, the Government has not and cannot meet its burden. First, the Court's order that HOPBS allegedly violated is not valid and lawful – it is void because of the Government's lack of service upon HOPBS. Additionally, the orders granting the Petition for Summary Enforcement, Default, and Default Judgment are otherwise due to be set aside under Fed. R. Civ. P. 60(b). Further, HOPBS has shown that, because of the Government's actions in the criminal investigation in the four years since it issued the first CID and the nature and circumstances of its improper second CID, HOPBS has no ability to comply

with the order to certify the first CID or to respond to the second CID and that the Government's insistence that it do so is otherwise improper and a violation of due process.

In short, the Government has not and cannot meet its burden to show that civil contempt will lie or is appropriate under these circumstances, and its request for contempt should be denied.

## C. Even if the Government Had Served HOPBS, the Orders Granting the Petition for Summary Enforcement, Default, and Default Judgment Should Be Set Aside.

Even if HOPBS had been properly served by the Government, which it was not, the order granting the Petition for Summary Enforcement, Default, and Default Judgment nonetheless should be set aside under Fed. R. Civ. P 60(b). First, there is a strong policy of determining cases on their merits, and courts, therefore, view defaults with disfavor. *See In re Worldwide Web Sys., Inc.,* 328 F.3d at 1295 (internal citations omitted).

Second, to establish mistake, inadvertence, or excusable neglect under Rule 60(b)(1), a party must show that: "(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Id.* (citing *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) (citing *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528

(11th Cir.1990)).  "With respect to the third element, 'a technical error or a slight mistake' by a party's attorney should not deprive the party of an opportunity to present the merits of his claim."  *Ehlers*, 8 F.3d at 783.

Here, HOPBS satisfies these elements.  As shown herein, HOPBS has meritorious defenses to and good reason for not certifying the first CID (impossibility and improper purpose) and not responding to the second CID (imposed for improper purpose, the invocation of the Fifth Amendment privilege by the officers/directors who would have to provide the responsive information, and impossibility).  Additionally, if HOPBS' counsel were incorrect that HOPBS was not properly served, that is a technical error or mistake that should not prevent the Court's adjudication of the important legal and constitutional issues at stake in these CIDs from being heard on their merits.

Finally, setting aside the orders for summary enforcement and default would not prejudice the Government. As established herein, the Government itself waited close to three years to seek certification of its first CID, and the Government's intervening actions in its criminal investigation have rendered HOPBS' compliance with the certification demand impossible.  Under similar circumstances, the Supreme Court has suggested that the proper course is to stay the civil process until the criminal process is complete, *not* compel the civil discovery proceed and responses. *See, e.g., U.S. v. Kordel*, 397 U.S. 1, 8-9 (1970).  Likewise, the second CID also

seeks information that HOPBS is in no position now to be able to provide given the ongoing criminal investigation and the Fifth Amendment rights of the individuals from whom it would have to obtain this information, and it should also be quashed or at least stayed until the criminal process is complete.  *Id.*   For all of these reasons as well, the elements of civil contempt are not satisfied, and no order of contempt should be issued.

II.     **The Government's Demand for A Certification for the First CID Almost Three Years After It Was Served And Its Second CID Are Improper, An Abuse of This Court's Process, And Have Rendered HOPBS' Performance Impossible.**

As explained in greater detail in the Factual and Procedural Background Section above, the circumstances under which the Government demanded the certification of HOPBS' responses to its first CID demonstrate that the request is improper, and the Government's attempt to try to force HOPBS to provide such a certification at this point is an abuse of this Court's process.  Additionally, the second CID is a blatant attempt to collect incriminating evidence in the criminal investigation, which is also improper and an abuse of this Court's process.  As such, contempt should not lie.

A.     **The Government's Intervening Criminal Investigation Has Rendered Demand for Certification of Responses to the First CID From Over Three Years Ago Improper, Impossible, And An Abuse of This Court's Process.**

As discussed above, the Government waited close to *three years* after the

issuance of the first CID to demand a written certification of the production and responses made by HOPBS to the first CID.  In that intervening three years, the Government actively engaged in a criminal investigation of these same entities, individuals, and issues, executing multiple search warrants and issuing target letters to principal officers/directors.  Indeed, it was only weeks after the exercise of that criminal investigatory process and contemporaneous to the Government's attempt to extract plea deals from the principal officers/directors that the Government suddenly demanded certification of the very CID responses they had claimed in the criminal investigation were false and/or fraudulent.  Combined with the fact that the federal agents involved in the CIDs were also active participants in the criminal investigation, including on information and belief, in the execution of the search warrants and the reverse proffers from the criminal AUSAs, the Government was plainly at that point using its civil investigation to attempt to gather evidence for its criminal investigation.

Former and current counsel for HOPBS have separately explained to the Government that the Government's actions in the criminal aspect of this investigation have rendered certification of HOPBS' responses to its first CID three years later impossible,[11] but the Government has continued to press this Court to

---

[11] The Supreme Court has suggested, in *Kordel*, that the appropriate remedy in such circumstances is "a protective order under Rule 30(b), postponing civil discovery until termination of the criminal action." *Kordel*, 397 U.S. at 8–9.

force such certification and even to hold HOPBS in contempt for failure to certify these responses when it knows that HOPBS has no ability to force any individual who might have previously been in a position to provide such certification before the criminal aspect of the investigation was pursued (and whom are now individually represented by counsel because of the Government's criminal investigation) to violate his or her Fifth Amendment rights to sign such a certification.

> **B.    The Government's Second CID Improperly Seeks Information to Incriminate HOPBS and Its Officers/Directors Instead of Information Relevant to Any Civil Investigation.**

The Government's improper use of its civil investigation to gather evidence for its criminal investigation is made even more stark by its second CID to HOPBS, which was issued in January 2023**.** That second CID (ECF No. 1-3) sought no new information related to the Government's supposed FCA investigation but instead sought only information designed to prove the criminal investigation's theory that the responses provided to the first CID were false/fraudulent.  *See, e.g., Matter of Plavin*, 2016 WL 11775142, at *5-6 (CID not subject to summary enforcement when information sought is not relevant to the Government's underlying investigation).

Specifically, the second CID does not seek relevant information related to the Government's civil investigation into possible FCA violations occurring prior to 2019.  Instead, it relates *solely* to obtaining inculpatory information for use in the criminal investigation.  For example, it seeks the names of the individuals who

responded or otherwise assisted with responding to the first CID, the names of individuals who created the documents which were produced, and any communications about responding to the first CID – and nothing else. The sole purpose of this second CID on its face is to gather information the government could otherwise not get in its criminal investigation about what the Government believes were commissions of federal crimes in HOPBS' response to the first CID; nothing in the second CID even remotely touches upon whether HOPBS violated the FCA before that CID was ever issued.

Not only is the information sought not material or relevant to the lawful purpose of the agency, but it is an abuse of the civil investigative process to obtain evidence for purposes of a criminal prosecution. While HOPBS acknowledges that, as a corporation, it has no Fifth Amendment privilege against self-incrimination and may be forced to produce potentially incriminating documents in its possession pursuant to a lawful CID, it is nonetheless improper for the Government, believing it has uncovered a distinct criminal offense committed during the civil investigation, to propound a new CID in its civil investigation directed solely to obtaining evidence related to the new alleged criminal act.

The second CID (like the demand for certification of the first one) is also an improper attempt to force officers/directors associated with HOPBS to incriminate themselves in violation of their Fifth Amendment privilege not to do so. *See Fisher*

*v. United States,* 425 U.S. 391, 408 (1976) (act-of-production doctrine recognizes that although "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence," it does apply "when the accused is compelled to make a *testimonial* communication that is incriminating."); *cf. Cent. States v. Carstensen Freight Lines, Inc.*, No. 96 C 6252, 1998 WL 413490, at *4 (N.D. Ill. July 17, 1998) ("[T]he act of verifying interrogatories on behalf of the companies is *testimonial in nature and raises Fifth Amendment concerns*. Therefore, the Seventh Circuit has explained that Rule 33(a) obliges a corporation to "*select an agent, who without fear of self-incrimination, [can] provide the information requested. United States v. 3963 Bottles, More or Less, Enerjol Double Strength,* 265 F.2d 332, 336 (7th Cir.1959), *cert. denied,* 360 U.S. 931 (1959).") (emphasis added); *Fed. Trade Comm'n v. Lexium Int'l LLC*, No. 2:17-CV-30-FTM-29CM, 2017 WL 2664360, at *9 (M.D. Fla. June 1, 2017), *report and recommendation adopted*, No. 2:17-CV-30-FTM-29CM, 2017 WL 2655107 (M.D. Fla. June 20, 2017) (corporate officer can invoke his Fifth Amendment privilege against self-incrimination in refusing to answer interrogatories to corporation) (citing *Kordel*, 397 U.S. at 7 ("Surely, [the corporate officer] was not barred from asserting his privilege [in answering interrogatories] simply because the corporation had no privilege of its own.")

At the core of the Supreme Court's opinion in *Kordel* is the idea that in a

parallel civil and criminal investigation, the Government must not act to subvert the "fundamental fairness" requirement of the due process clause or depart from the proper standards in the administration of justice.  Pursuit of the second CID for these improper purposes is a misuse of the Government's considerable power and an abuse of this Court's process, precluding summary enforcement of the CID.  *See Matter of Plavin*, 2016 WL 11775142, at *6 (abuse of Court's process occurs when CID issued for improper purpose) (internal citations omitted); *United States v. Kamal Kabakibou, MD, PC*, 522 F. Supp. 3d 1307, 1311 (N.D. Ga. 2020) (government acts in bad faith if it brings civil action solely for purpose of obtaining evidence in criminal prosecution); *United States v. Harrington*, 761 F.2d 1482, 1485 (11th Cir. 1985) (Government may not issue administrative subpoenas in ongoing investigation against *targets* of grand jury investigation); *cf. United States v. Sells Engineering Inc.,* 463 U.S. 418, 103 (1982) (barring government attorneys from obtaining automatic disclosure of grand jury materials for use in civil proceedings because of the potential for abuse of the grand jury process "to manipulate the grand jury's powerful investigative tools to root out additional evidence useful in the civil suit, or even to start or continue a grand jury inquiry where no criminal prosecution seemed likely. *Any such use of grand jury proceedings to elicit evidence for use in a civil case is improper per se*....") (emphasis added).

In sum, the Government's use of its civil compulsory powers against a

corporation to obtain criminally inculpatory information against its agents for purposes of an ongoing criminal investigation violates due process, fundamental fairness, and is an attempted end-run around the valid Fifth Amendment privilege of HOPBS officers/directors. It is an abuse of this Court's process, renders HOPBS' unable to comply, and this Court's orders permitting its enforcement should be set aside under Fed. R. Civ. P. 60. It certainly provides no basis for contempt against HOPBS.

## CONCLUSION

Because the Government never properly served HOPBS, its Petition for Summary Enforcement and Motions regarding Default and Default Judgment are void and should be vacated. Even if this were not the case, the orders granting the Petition, the Default, and the Default Judgment should nonetheless be set aside under Fed. R. Civ. P. 60(b).

Additionally, the Government's demand for certification of HOPBS' responses to the Government's first CID at this time and under these circumstances is improper, impossible, and an abuse of this Court's process, and its attempt to obtain incriminating evidence for the Government's criminal investigation via the second CID is likewise improper and an abuse of this Court's process. In short, there is no legal or factual basis for this Court to hold HOPBS (or anyone else) in contempt, and the Government's motion should be denied.

Respectfully submitted this the 11th day of March, 2024.

/s/ Holly A. Pierson
Holly A. Pierson
Georgia Bar No. 579655
PIERSON LAW LLC
171 17th Street NW, Suite 1550
Atlanta, GA 30363
(404) 353-2316
hpierson@piersonlawllc.com

/s/ Jennifer Little
Jennifer Little
Georgia Bar No. 141596
Jennifer Little Law, LLC
400 Galleria Pkwy SE, Suite 1920
Atlanta, GA 30339
(404) 947-7778 (o)
Jlittle@jllaw.com

*Counsel for HOPBS*

## CERTIFICATE OF SERVICE

I certify that I have this 11th day of March, 2024 electronically filed a copy of

the foregoing HOUSE OF PRAYER BIBLE SEMINARY RESPONSE TO SHOW

CAUSE ORDER with the Clerk of the Court using the CM/ECF system, which will

automatically send email notification of such filing to all counsel of record.

/s/ Holly A. Pierson
Holly A. Pierson
Georgia Bar No. 579655